IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| v. | : | |
| OSWELL MCGHEE | : | NO. 07-733 |

**MEMORANDUM OF REASONS FOR DENYING MOTION
FOR JUDGMENT OF ACQUITTAL OR NEW TRIAL**

Baylson, J.                FILED               April 20, 2012

APR 2 0 2012

**I. Introduction**

MICHAEL E. KUNZ, Clerk
By_____ Dep. Clerk

A Second Superseding Indictment (ECF No. 60) charged Defendant Oswell Ray McGhee ("Defendant") with possession to distribute cocaine base, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B) (Count One); possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(c) (Count Two); possession with intent to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(D) (Count Three); possession of firearms in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1) (Count Four); and possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) (Count Five).

A pretrial hearing was held on October 14, 2011. A jury trial commenced on October 24, 2011. At the close of the government's case-in-chief, Defendant moved for a judgment of acquittal, on which this Court reserved decision. On October 26, 2011, a jury returned a guilty verdict on all counts. Defendant filed a Motion for a Judgment of Acquittal or New Trial, pursuant to Rules 29 and 33 of the Federal Rules of Criminal Procedure (ECF Nos. 82, 92), and the Court held oral argument on March 30, 2012. By Order dated April 10, 2012 (ECF No. 104), the Court denied defendant's motion. This memorandum states the reasons. Sentence was

1

imposed on April 11, 2012 for 180 months, as required by a statutory mandatory minimum.

Defendant argues that a judgment of acquittal is appropriate because the evidence presented at trial was insufficient for a reasonable jury to conclude that (1) he constructively possessed the items in question; (2) he possessed the firearms "in furtherance of a drug trafficking crime;" and (3) that the relevant firearms "substantially affected interstate commerce." Motion ¶ 4. Defendant argues in the alternative that a new trial is warranted because of trial errors and the verdict being "wholly inconsistent with the manifest weight of the evidence introduced at trial." Motion ¶ 5.

## II. Factual Background

### A. Arrest and Search pursuant to warrants in 2007

The following relevant evidence was presented at trial. Before July 3, 2007, the Philadelphia Police Department obtained an arrest warrant for Defendant and a warrant to search a house designated in the warrant as 2525 North 8th Street in Philadelphia. See Tr. 10/24/11 at 29. On July 3, 2007, Philadelphia Police Detective Thomas DeMalto and his partner observed Defendant standing on a corner near 2525 North 8th Street, and arrested him. Tr. 10/24/11 at 30-31. Detective DeMalto did not observe Defendant engaging in any criminal activity. Tr. 10/24/11 at 38. The officers had no problems when they arrested Defendant and found no drugs or firearms on him.[1] Tr. 10/24/11 at 31, 34-35. Upon arrest, Defendant told Detective DeMalto

---

[1] Detective DeMalto testified that he could not recall whether Defendant had any money, cell phone, or keys on him at the time of arrest. Tr. 10/24/11 at 35-36. He testified that such property would have been put in a bag and returned to Defendant upon his release. Tr. 10/24/11 at 36. The incident report Detective DeMalto filled out upon arresting Defendant left blank the "property description," but Detective DeMalto also testified that cell phone, money and keys would not normally be included on that form. Tr. 10/24/11 at 37, 45.

that his address was 2525 North 8th Street and that he resided with his mother. Tr. 10/24/11 at 32-34. At some point, Detective DeMalto also performed a DMV search and found that Defendant's address was listed as 2525 North 8th Street. Tr. 10/24/11 at 100.

At approximately 8:00 a.m. the morning after Defendant was arrested, Philadelphia Police Detective Graf, his partner, and two uniformed officers went to 2525 North 8th Street to execute the search warrant. Tr. 10/24/11 at 47-48. Upon arrival, they met three occupants—Defendant's brother, Defendant's mother, and Defendant's mother's boyfriend or husband.[2] Tr. 10/24/11 at 49-51. "[T]here was a conversation about why [the officers] were there." Tr. 10/24/11 at 49. "[F]rom there, [Detective Graf] went to the second floor rear bedroom" with another officer and Defendant's mother. Tr. 10/24/11 at 49-50. Unlike the master bedroom and middle bedroom, which the officers were able to access, the rear bedroom was padlocked shut. Tr. 10/24/11 at 52. Detective Graf was unable to obtain a key from any of the residents present at that time and had to force the door open. Tr. 10/24/11 at 54.

In the room, Detective Graf saw in plain view a plate with two chunks of alleged crack cocaine. Tr. 10/24/11 at 54-55. This led him to search the entire room. Tr. 10/24/11 at 55. He found narcotics, $12,791 in United States currency, two digital scales, a money counter, two boxes of Goodsense sandwich baggies, a money counter, a shoe box filled with drug packaging

---

[2] These individuals were subpoenaed by the government to testify at trial. After consulting with court-appointed counsel, these individuals indicated that they would take the Fifth Amendment if called to testify. Tr. 10/24/11 at 4. The Court therefore instructed the jury that these individuals were not available to either the prosecution or the defense and that the jury should not speculate as to what testimony the individuals would give. Tr. 10/25/11 at 122.

3

materials, a loaded Colt Python .357 magnum revolver, and a loaded Hi-Point 9 mm handgun.[3] Tr. 10/24/11 at 55, 66-67, 69-78. In the opinion of a narcotics expert, the drugs taken from the rear bedroom were distribution quantities, and the other items were tools of the drug-trade consistent with street-level drug trafficking. Tr. 10/24/11 at 194-205, 207. The firearms were loaded and "ready to be utilized by whomever had access to them," as protection from home invaders or law enforcement. Tr. at 205-07.

Detective Graf also discovered a shoe box filled with mail addressed to Oswell McGhee at 2525 North 8th Street. Tr. 10/24/11 at 72-73. The box of mail was subsequently, inadvertently destroyed by the Philadelphia Police Department.[4] Tr. 10/24/11 at 97, 133-42.

Although fingerprint testing was ordered for the firearms, no fingerprint testing was performed on the seized items because usually the Philadelphia Police "only fingerprint if we don't know the identity of the person who owned those items" whereas "[[i]n this case, [their] investigation showed that Mr. McGhee was the owner of those items."[5] Tr. 10/24/11 at 102-03.

---

[3] None of the trace reports run on the guns came back to Defendant, and the 9 mm was in fact linked to another individual. Tr. 10/24/11 at 180-82.

[4] Prior to trial, Defendant moved to dismiss the Second Superseding Indictment, or, in the alternative to preclude reference to certain pieces of evidence (ECF No. 38). The basis for the motion is set forth in this Court's Memorandum of October 17, 2011 (ECF No. 64) and need not be repeated in full here. In sum, the box of mail found in the rear bedroom, along with certain other drug paraphernalia found in the rear bedroom—such as a scale, a money counter, and baggies—were inadvertently destroyed by the Philadelphia Police Department. The Court denied the motion, ECF No. 64; Tr. 10/24/11 at 82, but did give an adverse inference spoliation charge to the jury. Tr. 10/25/11 at 108-10.

[5] The Court instructed the jury that Detective Graf's only personal knowledge that Defendant was the occupant of the room was the box of mail and to the extent Detective Graf was giving an opinion about who occupied the room, such testimony constituted lay opinion and not fact. Tr. 10/24/11 at 121-22.

4

## B. State Court Proceedings, Federal Adoption, and Subsequent Arrest of Defendant in 2010

Defendant was charged with drug and firearm offenses in state court, and released on bail. Defendant failed to appear for trial, and a bench warrant was issued.

The case against Defendant was, at some point, federally adopted. Tr. 10/24/11 at 170. Detective Fran Carroll, a Philadelphia Police Detective on loan to the Bureau of Alcohol, Tobacco and Firearms, obtained a federal arrest warrant for Defendant, which he attempted to serve at 2525 North 8th Street on December 7, 2007. Tr. 10/24/11 at 170-71. However, Defendant was not there. Tr. 10/24/11 at 171. On January 10, 2010, just over two years later, a Scranton, Pennsylvania Police Officer arrested Defendant in Scranton. Tr. 10/24/11 at 172. At the time of the 2010 arrest, Defendant produced an identification card in the name of Elija McGhee, with an address of 734 West Wingohocking Street, Philadelphia, Pennsylvania, and claimed to be Elijah McGhee. Tr. 10/24/11 at 172. Through his fingerprints, it was determined that Defendant was not Elijah McGhee. Tr. 10/24/11 at 173. The Scranton Police Department contacted Detective Carroll. Tr. 10/24/11 at 171. Detective Carroll informed them that the active warrant on Defendant should act as a detainer. Tr. 10/24/11 at 171. Detective Carroll took Defendant into custody in Scranton and transported him to Philadelphia. Tr. 10/24/11 at 172-73. While processing Defendant, Detective Carroll asked Defendant for his address. Tr. 10/24/11 at 174. Defendant told Detective Carroll that he did not really have an address, and therefore to just use his mother's address at 2525 North 8th Street. Tr. 10/24/11 at 179. When Detective Carroll said he had been there looking for him, Defendant told him that he had "not been there since you were there looking for me." Tr. 10/24/11 at 174.

5

## III. Legal Standards

### A. Judgment of Acquittal - Fed. R. Crim. P. 29

In considering a Rule 29 motion, the Court must "review the sufficiency of the evidence in the light most favorable to the government, and [should] sustain the verdict if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Diallo, 575 F.3d 252, 256 (3d Cir. 2009). "A finding of insufficiency should be 'confined to cases where the prosecution's failure is clear.'" United States v. Brodie, 403 F.3d 123, 133 (3d Cir. 2005) (quoting Smith, 294 F.3d at 477). A district court may not "usurp the role of the jury by weighing credibility and assigning weight to the evidence, or by substituting its judgment for that of the jury." Id. (citing United States v. Jannotti, 673 F.2d 578, 581 (3d Cir. 1982) (en banc)). "Accordingly, the jury verdict must be upheld, unless, viewing the evidence in this manner, no rational jury 'could have found the essential elements of the crime beyond a reasonable doubt.'" United States v. Malik, No. 08-cr-614, 2009 WL 4641706, at *2 (E.D. Pa. Dec. 7, 2009) (Surrick, J.) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)).

### B. New Trial - Fed. R. Crim. P. 33

Under Rule 33, a court "may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33. Within its discretion, the court may grant a new trial only if it believes that "there is a serious danger that a miscarriage of justice has occurred-that is, that an innocent person has been convicted." United States v. Johnson, 302 F.3d 139, 150 (3d Cir. 2002). Additionally, the court must grant a new trial if errors occurred during the original trial, and it is reasonably possible that such errors substantially influenced the jury's decision. See United States v. Mastro, 570 F. Supp. 1388, 1390 (E.D. Pa. 1983); United States. v. Newmark,

No. 06-cr-447, 2008 WL 927961, at *32 (E.D. Pa. April 04, 2008) (Pratter, J.). "Unlike an insufficiency of the evidence claim, when a district court evaluates a Rule 33 motion it does not view the evidence favorably to the Government but instead exercises its own judgment in assessing the Government's case." Johnson, 302 F.3d at 150 (internal citations omitted). The Third Circuit has explained that "motions for new trials are disfavored and are only granted with great caution and at the discretion of the trial court." United States v. Martinez, 69 F. App'x 513, 516 (3d Cir. 2003) (citing United States v. Allen, 554 F.2d 398, 403 (10th Cir. 1977)).

## IV. Motion for Judgment of Acquittal

### A. Constructive Possession of Drugs

Defendant argues that the evidence against him is analogous to that presented in United States v. Brown, 3 F.3d 673 (3d Cir. 1993), United States v. Jenkins, 90 F.3d 814 (3d Cir. 1996), and the very recent non-precedential Third Circuit case United States v. Bates, No. 10-cr-4439, 2012 WL 593271 (3d Cir. Feb. 24, 2012), all of which overturned defendants' convictions in whole or part due to insufficient evidence of constructive possession.

In Brown, the Third Circuit held that mere residence in a house in which drugs were found was insufficient to support a finding of constructive possession. Id. at 683. There, defendant Ama Baltimore (1) had a key to the house where drugs were found; (2) arrived at the house while police were searching it and attempted to use her key to enter; (3) announced that she was "in [her] own house;" and, additionally, (4) a pair of her shorts, with a switchblade in the pocket, were found in a room in the house in which no drugs were found and (5) the house was known as a "cut house"—i.e. one where drugs were stored, cut, and packaged for sale. Id. at 680. Baltimore's fingerprints were not found on any of the drugs (whereas her co-defendant's were)

and the house was owned only by her co-defendant. Id. at 681. The Third Circuit noted that "mere proximity to the drugs, or mere presence on the property where it is located or mere association with the person who does control the drug or the property, is insufficient" to establish dominion and control for purposes of constructive possession. Id. at 680. Consequently, the Third Circuit concluded that "the evidence against Baltimore is consistent with that of someone with access to or residing at the Brown residence, but with no control over the drugs or drug packaging activities of Brown and others occurring therein." Id. at 682. Relevant to the facts here, the Third Circuit in Brown contrasted the evidence against Baltimore with that in the Eighth Circuit case United States v. Brett, 872 F.2d 1365 (8th Cir. 1989). The Third Circuit explained that "a number of factors" supported the constructive possession finding in Brett—including the fact that the defendant fled the area and falsely identified himself upon arrest. Id. at 682 (citing Brett, 872 F.2d at 1368-69).

The Third Circuit held in Jenkins that "[b]ecause the evidence showed only that [Jenkins] was in an acquaintance's apartment physically near but not in actual possession of drugs and drug distribution paraphernalia, it does not support the jury's finding that he had dominion and control over the drugs." Id. at 816. When police entered the apartment in question, they found Sean Jenkins and his co-defendant Stallings, who was believed to be the resident of the apartment, wearing boxers and t-shirts and sitting on a couch behind a coffee table covered in cocaine and drug distribution paraphernalia including two scales, with a loaded sawed-off shotgun on the floor. Id. at 816. No cocaine residue was found on Jenkins or Stallings and neither made any attempt to hide or destroy the contraband. Id. at 817. Moreover, certain key instruments for cutting or cooking cocaine were absent. Id. at 816-17. The government tried to distinguish the

8

evidence against Jenkins from that presented against Brown, arguing that the cases were distinguishable because in Brown, Baltimore's shorts were found in a different room from the drugs. The Third Circuit rejected that argument, explaining that in light of its conclusion "that [Baltimore's] residence in the cut house was insufficient to prove dominion and control over the drugs, it would not have mattered if there had been evidence that she had visited the kitchen or bedroom, so long as the evidence did not also show that her visit pertained to the drugs." Id. at 819. Rather, the evidence against Baltimore and Jenkins was "analogous," causing the Third Circuit to determine that "[s]ome additional evidence of dominion and control is required before a finding of constructive possession can be made beyond a reasonable doubt." Id. at 820. The Third Circuit reversed Jenkins's conviction, explaining that "[w]ithout other proof of dominion and control" it could "only conclude that it was sheer happenstance that Jenkins was seated on the couch next to the cocaine when the police entered the apartment." Id.

In the non-precedential opinion in Bates, a panel of the Third Circuit determined that the district court improperly distinguished Brown and Jenkins and, moreover, that there was no evidence linking the defendant to the drugs found within the house. 2012 WL 593271 at *1. There, police officers observed the defendant, Rashaan Bates, selling crack cocaine to a confidential informant after exiting 1474 Lardner Street. Id. The next day, police officers returned to the area to execute a search warrant for that address. Id. They saw Bates sitting on a stoop across the street, frisked him, and found a firearm, twelve packets of crack cocaine, and a key on his person. Id. The key opened the door to 1474 Lardner Street. Id. The officers then found heroin and heroin paraphernalia—including a credit card covered in heroin residue which had the name Yajaira Batisa on it and a tally book with notations in Spanish—inside the

9

residence, which was otherwise vacant. Id. at 2. Bates previously lived at the address but no longer did so. Id. The Third Circuit noted that "Bates's fingerprints were not found in the room containing the drugs, no evidence placed him in the bedroom containing the drugs, he had no heroin on his person, and no heroin residue was found on his clothes or person." Id. In holding that the district court erred in denying Bates' motion for judgment of acquittal, the Third Circuit emphasized the holdings in Brown and Jenkins that proximity and residence are insufficient to establish constructive possession. There was no evidence tying Bates to the room in which the drugs were found—indeed, the evidence demonstrated that he had been in the residence only once since moving out. Id. at *7. There was also no evidence linking him to the heroin, which the Third Circuit pointed out was not the type of drug found on him. Id. at *7-8. In addition, the name on the credit card and the tally book notes in Spanish did not incriminate Bates. Id. at *8. It also could not be said that the vacant house was a "fortified crack house." Id. at *7.

In arguing that the evidence against him is like that presented in Brown, Jenkins, and Bates, Defendant points to several facts: Defendant was arrested away from the room in which the drugs were found; he had no key to the residence on him when arrested;[6] the government presented no evidence that he ever touched the drugs or had any knowledge of them; there was no evidence of police observing sales or suspected sales taking place; and the house was not a "fortified drug house" but rather was used as a residence by Defendant's parents and brother. Defendant argues that the only evidence linking Defendant to the drugs was Detective Graf's testimony that he saw a box of letters addressed to Oswell McGhee in the room in which the

---

[6] At oral argument, the government pointed out that in fact the evidence was that the officer could not recall whether or not a key was found on Defendant.

10

drugs were discovered, and his statement that his mother's address was 2525 North 8th Street when arrested in 2010, and contends that this alone is insufficient. Def. Br. at 15-17.

The government counters that the evidence that Defendant lived in the rear bedroom and thus constructively possessed the drugs is stronger than that in Brown, Jenkins, and Bates. When Defendant was arrested near 2525 North 8th Street in 2007, he gave that residence as his address. When officers searched the residence, they proceeded to the rear, padlocked bedroom after having "a conversation" with the family members. None of the family members produced a key for the padlock. The officers then found a box of mail addressed to Oswell McGhee in the rear bedroom. From these facts, the government argues, the jury could have reasonably inferred that Defendant occupied and controlled the locked rear bedroom. Moreover, because Defendant was arrested two/three years later, produced a false identification card, and admitted he had not returned to his mother's house since agents came looking from him in 2007, the jury could also reasonably have inferred that Defendant was conscious of his guilt. Gov. Br. at 12-15.

The government also tries to analogize the facts at hand to those in Jackson v. Byrd, 105 F.3d 145 (3d Cir. 1997), arguing that Defendant's living at 2525 North 8th Street is similar to his being the lessee of the property. Id. at 15-16. The sole issue before the Third Circuit in Jackson, a state habeas case,[7] was the sufficiency of the evidence supporting Jackson's convictions based on constructive possession of a controlled substance. Id. at 147-48. In holding that the evidence sufficed to uphold Jackson's conviction, the Third Circuit focused on the trial court's factual findings that (1) Jackson had access to and control of all areas of the apartment, including the

---

[7] Although this is a state habeas case, the Third Circuit noted that it would affirm defendant Jackson's conviction even if it were a direct appeal from a federal district court conviction. Jackson, 105 F.3d at 150.

11

rear bedroom in which the drugs in question were found; (2) Jackson owned the ice chest in which the drugs were found; and (3) drug paraphernalia was found in a kitchen cabinet and closet that Jackson shared. Id. at 149. That Jackson lived in the front bedroom, in which no drugs were found, while her brother lived in the rear bedroom, did not change the Third Circuit's decision. Id. Instead, noting that "Pennsylvania considers being a lessee or owner of the residence an important factor in establishing dominion and control over the contraband," the Third Circuit concluded that a reasonable trier of fact could find the elements of the charged crimes prove beyond a reasonable doubt based on the fact that the rear bedroom was unlocked, Jackson was present when the police executed the warrant, and the facts listed above. Id. The Third Circuit distinguished Jenkins and Brown on two principal grounds. Id. at 149-50. First, in Jenkins and Brown, Jenkins and Baltimore did not own or lease the residences in which police found drugs. Id. Additionally, in Brown, Baltimore's possessions were not found in the same room as the drugs. In contrast, Jackson "was the lessee of the apartment and had access to all parts of it, circumstances which logically tend to support a conclusion that she had constructive possession of the apartment's contents." Id. at 150. Second, in Jenkins there were adults other than Jenkins present when police entered and found the drugs, and in Brown Baltimore did not enter the house until after police arrived, whereas Jackson was the only adult present when police arrived and found drugs. Id.

The government also likens this case to United States v. Stallings, No. 97-1035 (3d Cir. 1997) (currently unavailable on Lexis or Westlaw). See also United States v. Stallings, 135 F.3d 768 (3d Cir. Oct. 15, 1997) (Table of Decisions notation that the order was affirmed). In this non-precedential opinion, a panel of the Third Circuit affirmed the conviction of Sam Stallings,

Jenkins's co-defendant, distinguishing the cases on "at least one important regard: Jenkins was only a visitor in the apartment, whereas Stallings resided in the apartment in which he and Jenkins were arrested." United States v. Stallings, No. 97-1035, slip op. at 5 (3d Cir. Oct. 15, 1997). The Third Circuit panel noted that Brown and other cases Stallings cited held only that factors such as proximity or presence alone were insufficient evidence of possession. Id. In contrast, with respect to Stallings, a "confluence of factors," including his residence in the apartment in which the drugs were found, "provided substantial evidence that, when viewed in a light most favorable to the Government, permitted the jury to find this combination of facts highly probative and sufficient to determine that Stallings constructively possessed the contraband." Id. at 7-8.

Turning back to the instant case, this Court concludes that there is more than sufficient evidence to link Defendant to the house at 2525 North 8th Street based on (1) his supplying that address as his own when arrested in 2007; (2) his providing that address when arrested in Scranton, albeit stating that it was his mother's house; (3) the DMV inquiry that produced 2525 North 8th Street as Defendant's address, and (4) the box of mail addressed to Oswell McGhee at that address.

There is less evidence linking Defendant to the rear bedroom, in which the relevant drugs, drug paraphernalia, and firearms were found. Viewing the evidence in light most favorable to the government, the Court nevertheless finds that the circumstantial evidence of constructive possession was sufficient for a reasonable jury to find Defendant guilty on all counts.

While the government's analogy to Jackson is unavailing, as there is no evidence that Defendant is a lessee or owner of 2525 North 8th Street, and, per Brown, mere residence cannot

establish dominion and control over the drugs, here, there are four pieces of evidence in addition to Defendant's residence at 2525 North 8th Street that support the jury's verdict:

(1) None of the family members could produce a key to the padlocked bedroom;

(2) The police who were executing the search warrant for Defendant went to the rear bedroom after having "a conversation" with the family members, which would have allowed the jury to infer that Defendant resided in the rear bedroom;

(3) Detective Graf found a box of mail addressed to "Oswell McGhee" in the room;

(4) Defendant did not return to the home for more than two years and upon arrest assumed a false identity.

See Stallings, No. 97-1035 at 7 (residence combined with other circumstantial evidence sufficient to support a finding of constructive possession). Despite the fact that the probative value of the box of mail was lessened by the government's inadvertently destroying it, the box of mail still provides a link between Defendant and the rear bedroom—and therefore the drugs and other items—beyond his mere residence at 2525 North 8th Street. This connection between Defendant and the room from which the contraband was seized is what was missing in Brown, Jenkins, and Bates. The box of mail, bolstered by the fact that none of the family members had a key to the bedroom and the officers went to the bedroom after speaking with family members, provides sufficient evidence for a reasonable jury to infer that Defendant lived in the bedroom and had constructive possession over the drugs, drug paraphernalia, and firearms found locked inside it.

In addition, Defendant's flight and false identification tend to establish his consciousness of guilt. United States v. Green, 25 F.3d 206, 210 (3d Cir. 1994). Flight "has been consistently held admissible as circumstantial evidence of guilt to be considered with the other facts of the

case." United States v. Miles, 468 F.2d 482, 489 (3d Cir. 1972) (citing Allen v. United States, 164 U.S. 492, 499 (1896)). This fact in particular distinguishes this case from Brown, Jenkins, and Bates. The Court therefore finds that there was sufficient evidence for a rational fact finder to find beyond a reasonable doubt that Defendant constructively possessed the relevant items.

### B. Possession of Firearms Used in Furtherance of Drug Trafficking Crime

Defendant asserts that there was insufficient evidence to sustain the conviction of possession of the guns in furtherance of a drug trafficking crime. The leading case in this circuit is United States v. Sparrow, 371 F.3d 851 (3d Cir. 2004). To determine whether a gun is possessed in furtherance of a drug trafficking crime, the Third Circuit has enunciated the following relevant factors:

> the type of drug activity that is being conducted, accessibility of the firearm, the type of the weapon, whether the weapon is stolen, the status of the possession (legitimate or illegal), whether the gun is loaded, proximity to drugs or drug profits, and the time and circumstances under which the gun is found.

Sparrow, 371 F.3d at 853 (quoting United States v. Ceballos-Torres, 218 F.3d 409, 414-15 (5th Cir. 2000)).

In United States v. Bass, No. 09-cr-298, 2010 WL 2635795 (E.D. Pa. June 28, 2010), the undersigned denied a motion for judgment of acquittal, relying on Sparrow, with similar facts. In this case, the guns were in close proximity to the drugs, and the jury was entitled to infer that the presence of guns was "in furtherance" of a drug trafficking crime. The firearms were loaded and an expert testified that they were "ready to be utilized by whomever had access to them." The presence of approximately $12,000 in United States currency is also a strong factor supporting the connection between the guns and the drugs. Finding so much money in any house, let alone a house in North Philadelphia, which is not an area of wealthy residences or wealthy people, makes

15

the possession of such a large amount of cash, found adjacent to guns and drugs, highly probative and incriminating, that the guns were part of a drug trafficking enterprise. The jury could conclude that there was no legitimate reason for such a large amount of money to be in the bedroom and that its presence there established that the person who occupied the bedroom was involved in drug trafficking, considering the other drug paraphernalia located there, and that the guns were part of the overall drug trafficking.

The jury could have inferred, from the presence of such a large amount of currency in a locked rear bedroom of a row home in North Philadelphia, that the room was in current use for drug business because it is unlikely that any law-abiding person would leave so much cash in such a place for a long period of time, along with drug scales, etc.

### C. Firearms Affecting Interstate Commerce

The evidence on this count was also sufficient for the same reason that the evidence was sufficient to sustain Defendant's conviction for possession of the firearms. Defendant's main argument here is that the statute, either on its face or as applied, is unconstitutional. The Court presumes that Defendant has raised this issue for preservation for assertion on appeal, as this Court is bound by a long line of precedents that require denial of Defendant's Motion for arrest of judgment on Count Five, charging violation of 18 U.S.C. § 922(g)(1).

### V. Motion for a New Trial

Defendant's Motion for a New Trial is based on four assertions—first, that the prosecutor made an improper argument; second, that hearsay evidence was improperly ruled admissible; third, that the Court erred in allowing police officers to give an opinion; and fourth, that the Court erred in allowing police officers to testify about finding mail addressed to Defendant in the room, when the mail had been confiscated by the police but destroyed prior to trial. The Court

will consider each one of these grounds separately.

Initially, it must be noted that the standard of review is whether the District Court abused its discretion in ruling on a new trial motion. The Court must keep in mind the harmless error provisions of Rule 52. The refusal to grant a new trial is not error if, at trial, the substantial rights of Defendant were not affected. Government of Virgin Islands v. Bedford, 671 F.2d 758 (3d Cir. 1982).

### A. Prosecutor's Argument

In the prosecutor's opening statement, she stated that the government would prove that Defendant lived at 2525 North 8th Street with his stepfather, mother and younger brother and occupied the rear bedroom. This statement was supported by the evidence introduced at trial, as reviewed above, and therefore cannot constitute prosecutorial misconduct. It must be remembered that Defendant himself admitted that he lived with his mother at 2525 North 8th Street on July 3, 2007 when he was first arrested by police near his residence, and once again admitted that was his mother's residence, and told officers to use it as his own address when he was arrested again in Scranton in 2010.

### B. Hearsay

The second allegation of error relates to the trial testimony of Detective Graf, that when the police went to 2525 North 8th Street on July 4, 2007, and asked for Defendant, they found three occupants there who were brought down to the living room as part of securing the residence. The police told these individuals that they were looking for Defendant. The testimony continued that as a result of this conversation, the police then went to the second floor rear bedroom. In support of his Motion for New Trial, Defendant asserts that the introduction of this testimony was hearsay and also that the prosecutor improperly used this evidence in both his

17

opening and closing arguments.

In the first place, defense counsel did not object to the introduction of this testimony at the time of trial, Tr. 10/24/11 at 49-50, and therefore, this cannot be grounds for the grant of a new trial. However, the Court also concludes that any objection would have been futile and overruled because the record of the trial shows that this was not hearsay, which is defined in F.R.E. 801(c) as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." The trial record does not show that any "statement" was introduced into evidence. The only evidence introduced was of conduct, that there was a communication between the occupants of the house and the police, but the contents of the communication was never revealed to the jury.

Secondly, after the communication, the police went to and forcibly entered the locked rear bedroom. Although one may infer from the evidence introduced that the occupants had advised the police that Defendant lived in the rear bedroom, that does not make the admission of this conduct a violation of the rule against hearsay.

More importantly, the police had a valid search warrant to search the entire house. The police would have surely searched that bedroom during the search of the entire house. If the testimony of Detective Graf about his interaction with the family members was erroneously admitted, it was "harmless error" because the police would have undoubtedly entered the room themselves, even if the occupants of the house had not said anything to them about the second floor bedroom. Police would surely have searched that second floor bedroom, particularly when they did not find any drugs in any other place in the house, and that bedroom was closed with a padlock. Thus, it is clear that the drugs, guns and other items in the second floor bedroom would have been found as a result of a search of the house, and the testimony about the communications

18

between the police and the occupants was not a substantial factor in the police eventually entering that room.

### C. Opinion Testimony

Defendant also asserts that there was error that Detective Graf testified on re-cross examination based on his investigation, that Defendant was the owner of the narcotics. Tr. 10/24/11 at 16. This alleged error must be viewed in context of the very detailed and aggressive cross examination of Detective Graf by defense counsel. This line of attack focused on the absence of fingerprints or other incriminating evidence, which was intended to cast some doubt on the government's overall contention that Defendant occupied the padlocked bedroom. Thus, this cross examination "opened the door" for Officer Graf gave an explanation as to why he did not collect fingerprints. At this point, after a discussion with counsel in the absence of a jury, (Tr. 10/24/11 at 117-120) the Court immediately gave the jury an instruction limiting this testimony, but allowing the jury to consider it as a "lay opinion," without objection by counsel. Tr. 10/24/11 at 120-22.

### D. Missing Mail

The last point alleged by Defendant pertains to the admission of testimony about the shoe box, when it and its contents (mail addressed to Defendant at the same address), had been lost. On this point, the Court exercised its discretion in allowing the testimony, but giving the jury an instruction on spoilation that was, in the total context, fair to both the government and Defendant. Tr. 10/25/11 at 109-110. Of course, the absence of the physical envelopes, which Detective Graf testified were addressed to Defendant, was a significant factor. But much of this case depended on the credibility of Detective Graf. His assertion, under oath, that these envelopes, addressed to the Defendant were found in the bedroom along with the drugs and guns,

was admissible for consideration by the jury. It would have been highly improper for the Court to preclude the government from introducing this testimony and to usurp the fact finding function of the jury. Defense counsel has not been able to cite any cases that such a ruling was reversible error.

## VI. Conclusion

An appropriate Order denying Defendant's motion was previously entered.

Date: 4/20/12

Michael M. Baylson, U.S.D.J.

O:\Criminal Cases\07-733 US v. McGhee\McGhee post-conviction Memo.wpd